IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL GREGO,                         :
                    Petitioner         :
                                       :
    vs.                                :    CIVIL NO. 1:CV-13-2675
                                       :
JOHN KERESTES, et al.,                 :         (Judge Caldwell)
                    Respondents        :
                                       :
                                       :

M E M O R A N D U M

I.   *Introduction*

        Petitioner, Michael Grego, has filed a pro se petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  The petition challenges his November 2008

convictions in the Court of Common Pleas of Monroe County, Pennsylvania.  The

documents setting forth the claims for habeas relief are Docs. 27 and 28.  See Doc. 29.

        The convictions arose from incidents at Petitioner's house involving three

minors, S.Z., A.G., and B.C., that occurred from about October 2006 through December

2006.  In a November 2008 jury trial, Petitioner was found guilty of the following offenses:

(1) one count of indecent assault of a person less than thirteen years of age, a violation

of 18 Pa. Cons. Stat. Ann. § 3126(a)(7); (2) one count of attempted rape of a child, a

violation of 18 Pa. Cons. Stat. Ann. § 901(a); (3) two counts of corruption of minors,

violations of 18 Pa. Cons. Stat. Ann. § 6301(a)(1); (4) two counts of indecent exposure,

violations of 18 Pa. Cons. Stat. Ann. § 3127(a); (5) three counts of open lewdness,

violations of 18 Pa. Cons. Stat. Ann. § 5901; (6) three counts of unlawful contact with a minor, violations of 18 Pa. Cons. Stat. Ann. § 6318(a)(1); and (7) two counts of dissemination of explicit sexual materials to a minor, violations of 18 Pa. Cons. Stat. Ann. § 5903(c)(1).[1]  In March 2009, he was sentenced to an aggregate term of 135 months to 288 months.

Petitioner took a direct appeal which was unsuccessful.  *Commonwealth v. Grego*, No. 3742 EDA 2009 (Pa. Super. Ct. Mar. 17, 2011).  He also filed a petition under the Pennsylvania Post Conviction Relief Act (PCRA), *see* 42 Pa. Cons. Stat. Ann. § 9541-9546, which the trial court denied on February 24, 2012.  (Doc. 21-3, ECF p. 33).  The trial court's denial of PCRA relief was upheld on appeal.  (Doc. 21-3, ECF p. 80, *Commonwealth v. Grego*, No. 843 EDA 2012 (Pa. Super. Ct. Nov. 1, 2012).

II. *Federal Habeas Law*

Under 28 U.S.C. § 2254, a state prisoner can seek federal habeas relief from his conviction only for violations of federal law, not state law.  *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011).  In pertinent part, as stated in 28 U.S.C. § 2254(a), the petitioner can seek relief "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

When a petitioner's federal claims have been adjudicated against him by the state courts, habeas review of the state courts' resolution of the claims is governed by

---

[1]  Petitioner was acquitted of aggravated indecent assault of a child, 18 Pa. Cons. Stat. Ann. § 3125(b); false imprisonment, *id.* § 2903(a); and one count of corruption of a minor.  *Id.* § 6301(a)(1).

28 U.S.C. § 2254(d)(1) and (d)(2).  Under subsection (d)(1), we may grant the writ if the state courts' adjudication of the claims was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent.  "[A] state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply."  *McMullen v. Tennis,* 562 F.3d 231, 236 (3d Cir. 2009) (cited cases omitted). "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly."  *Jacobs v. Horn,* 395 F.3d 92, 100 (3d Cir. 2005)(cited cases omitted).  If "'fairminded jurists could disagree' on the correctness of the state court's decision,"  habeas relief cannot be granted.  *Harrington v. Richter,* 562 U.S. 86, 101, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoted case omitted).

Under subsection (d)(2), we may grant the writ if the state courts' adjudication of the claims "resulted in a decision that was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "A state court decision is based on 'an unreasonable determination of the facts' only if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding.'"  *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013)(quoted case omitted). State-court fact finding "is presumed to be correct."  28 U.S.C. § 2254(e)(1).  The

petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

Additionally, a federal court cannot grant habeas relief to a section 2254 petitioner unless the petitioner has exhausted the remedies "available" in state court on his federal claims. *See* 28 U.S.C. § 2254(b)(1)(A); *Slutzker v. Johnson,* 393 F.3d 373, 379 (3d Cir. 2004)(citing section 2254(b)(1)(A)). Exhaustion is accomplished "by fairly presenting each claim at each stage of the state's established appellate review process." *Villot v. Varner*, 373 F.3d 327, 337 (3d Cir. 2004). On a Pennsylvania conviction, a petitioner must present his claims as far as the Pennsylvania Superior Court because Order 218, an administrative order from the Pennsylvania Supreme Court, has made review in the state supreme court "unavailable for purposes of exhausting state court remedies . . . ." *Boyd v. Waymart,* 579 F.3d 330, 368 (3d Cir. 2009)(quoted case and internal quotation marks omitted).

III.   *Discussion*

A.  *The Claim Concerning Dr. Andrea Taroli's Testimony*
     *Is Not Redressable in Federal Habeas Because It Does*
     *Not Present a Federal Claim*

Petitioner claims that the trial court violated his right to due process by allowing Dr. Andrea Taroli, the Commonwealth's medical expert, to testify about certain matters. In relevant part, Petitioner contends that the trial court abused its discretion by

allowing Dr. Taroli to give hearsay testimony from the victims under Pa. R. Evid. 803(4). Rule 803(4) permits hearsay statements made for medical diagnosis or treatment.[2]

The background to this claim is as follows.  At trial, Dr. Taroli was qualified as an expert in forensic pediatrics.  (Doc. 21-7, ECF p. 31).  She is the medical director of the Pegasus Child Advocacy Center, a "child friendly" place where children can be more relaxed than at a hospital or police station when the child is interviewed about an allegation of abuse or neglect.  (*Id.*, ECF pp. 31-32).  As part of the process, Dr. Taroli gathers background information from the family -- past medical history, family and social history.  (*Id.*, ECF p. 33).  She also obtains the child's medical and surgical history.  (*Id.*).

A forensic interviewer, who does not know what the allegations are, interviews the child.  (*Id.*, ECF p. 34).  So that the child does not have to speak to a number of people at one time, the interview is observed over closed-circuit television by interested parties.  These parties would include child-protective-services persons, law-

---

[2] Rule 803 lists statements that are not excluded from evidence by the hearsay rule. Among them is:

A statement that:

   (A) is made for – and is reasonably pertinent to – medical treatment or diagnosis in contemplation of treatment; and

   (B) describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

Pa. R. Evid. 803(4).  As Petitioner notes, the Pennsylvania rule is the counterpart to Fed. R. Evid. 803(4) although the language differs somewhat.

enforcement personnel, and Dr. Taroli.  (*Id*.).  The forensic interviewer also knows the medical information Dr. Taroli needs and the information child-protective services and law enforcement need.  Nonetheless, she will check with the observers for anything she forgot to ask because the purpose of the interview is to gather information for all the professionals so that the child does not have to be re-interviewed.  (*Id*., ECF p. 35).

After the interview, Dr. Taroli performs a physical examination of the child. After the examination, she discusses  the results with child-protective services and law enforcement and they will "formulate a plan as to what they're going to do next."  (*Id*., ECF pp. 35-36).

Dr. Taroli testified that she followed this basic procedure on March 15, 2007, with S.Z., one of the minor victims.  (*Id*., ECF p. 36).  She was then asked what medical history she had obtained about S.Z.  Dr. Taroli started her response by stating that B.C. had made certain comments to B.C.'s grandmother.  Over defense counsel's objection that this was not "medical history" but a "history of accusations made by someone else," (*id*., ECF p. 37), Dr. Taroli continued with her testimony, testifying not to S.Z.'s medical history but to how the allegations against Petitioner surfaced, that one of the other minor victims, B.C., had given information to her grandmother.  Specifically, Dr. Taroli testified:

> THE WITNESS: The allegations came forward by [B.C.] telling her grandmother that at the home of the Defendant he had provided the two girls . . . with alcohol and cigarettes, and the grandmother said there was some concern about a picture of him naked on a cell phone he had given [S.Z.]

(*Id.*, ECF p. 37).

Petitioner asserts that this testimony was improperly admitted in violation of the hearsay rule and could not be admitted under the Rule 803(4) exception for statements made for medical diagnosis or treatment as the statements were not made by S.Z. or her parents and did not relate to S.Z.'s medical history.

In response to a question about whether she was "aware of the general allegations or the general nature of the allegations," Dr. Taroli testified:

> A: Yes.  I didn't have a lot of the details, but basically the child had said –- well, she had a lot of other associated symptoms reported by the parents.
>
> She had not been doing well in school for about two years prior to the visit with me.  She had had a lot of anger issues in the year prior.  The summer before the mother reported to me that the child had a lot of nightmares and would be screaming in the middle of the night.

(*Id.*, ECF p. 38).  Petitioner argues this testimony was improperly admitted because it was not responsive to the question and that testimony about "other associated symptoms" was not relevant to the case.  Petitioner also asserts that the crimes were alleged  to have occurred between October and December 2006, so that testimony about a symptom going back more than two years before the examination is not relevant as he did not know S.Z. or her parents at that time.  Further, Petitioner argues that the statements of S.Z.'s parents were inadmissible hearsay as they did not testify at trial and the defense had no opportunity to cross-examine them.

In response to the following question from the prosecutor, over defense counsel's objection that it was hearsay, she also testified as follows in regard to S.Z.:

> Q: In regards to the child, did she make any statements to you, or did you ask her in regards to basically what had happened that would assist you in your physical exam to look for any areas of injury?
>
> . . . .
>
> THE WITNESS: The child disclosed that a number of sexual acts had been performed.  She was exposed to a large amount of inappropriate sexual content.  She had been touched inappropriately, that she would have to play a game where she sat on top of him and had to go up and down.
>
> He showed pictures of pornography and sex toys on the computer.  She remembered the first time something happened when she was much younger and he was touching her private and rubbing it.  The way –- what she had said was fiddling with it.  He pulled her over on her side, and she felt something against her butt which was soft and then became hard.  She didn't know what it was at that time.
>
> He would wear nothing under his robe.  He would masturbate in front of her, that he would masturbate and white stuff would come out of his penis.  And when he would chase her around the house, the white stuff would go all over the place.

(*Id.*, ECF p. 41).

Further questioning was as follows:

> Q: What we'll do is this.  Let me just skip ahead.  Also, did she complain –- did she complain of any penetration?
>
> A: Yes.  She said that he told her that sex is when you put the penis in a woman's butt hole.  He did try to put it in her butt and she hit him.  She –

(*Id.*, ECF p. 41-42).  Defense counsel objected that it was not clear whether this testimony was based on Dr. Taroli's observation of the forensic interview or from statements S.Z. made to the doctor during the medical examination.  Dr. Taroli responded that her testimony was based on her observation of the forensic interview and from talking to S.Z.  (*Id.*, ECF p. 42).

Petitioner argues this testimony was improperly admitted for the following reasons.  First, the doctor improperly relied on what she observed through the closed-circuit television rather than on what S.Z. told Dr. Taroli directly.  Second, the doctor testified to S.Z.'s hearsay statements even though they were not relevant to medical treatment or diagnosis.  Third, the doctor improperly testified that S.Z. had identified Petitioner as the perpetrator of the crime which cannot come in under the Pennsylvania Supreme Court's interpretation of state Rule 803(4) in *Commonwealth v. Smith*, 545 Pa. 487, 494-95, 681 A.2d 1288, 1292 (1996)(victim's out-of-court statement identifying the defendant as the perpetrator of the injuries was not admissible under Rule 803(4) because the identity of the perpetrator is irrelevant to medical diagnosis or treatment).  As further support for this argument, Petitioner makes two points.  One, he contends the trial came down to an issue of the credibility of the minor victims so that the doctor's testimony identifying him as the perpetrator bolstered S.Z.'s testimony.  Two, S.Z. did not go to the Center for the purpose of medical treatment but for the purpose of a police investigation, so under *Commonwealth v. Garces*, 82 Pa. D.&C.4th 178 (Pa. Com. Pl. Ct. Monroe Cnty. 2006), the testimony was not admissible under Rule 803(4) because it was

"testimonial" in nature, meaning that it was subject to the requirements of the

Confrontation Clause.  U.S. Const. amend VI.  Petitioner also observes that the jury was

not instructed that this testimony could only be considered for a limited purpose.  He

further contends that the testimony of this medical expert reinforced S.Z.'s testimony (and

by identifying Petitioner as the perpetrator) "did strip the petitioner of the presumption of

innocence," (Doc. 28, ECF p. 16), that no jury instruction could fix.

   The superior court rejected this claim on direct appeal.  First, citing

*Commonwealth v. Lomax*, 8 A.3d 1264, 1266 (Pa. Super. Ct. 2010, the court observed

that admission of evidence is within the sound discretion of the trial court and will not be

disturbed absent an abuse of that discretion.  (Doc. 21-3, ECF p. 7).  Second, S.Z.'s

statements were admissible under Rule 803(4) unless they were testimonial in nature,

citing *Commonwealth v. Allhouse*, 604 Pa. 61, 985 A.2d 847 (2009), but her statements

were not testimonial; they were instead given for the purpose of medical diagnosis and

treatment.  (*Id.*, ECF p. 8).  Third, Dr. Taroli's testimony was not given to sustain S.Z.'s

credibility but to show how a doctor conducts a medical examination, citing

*Commonwealth v. Hernandez*, 420 Pa. Super. Ct. 1, 615 A.2d 1337 (1992).  (*Id.*).

Fourth, "[t]he content of Dr. Taroli's testimony was a chronology of events leading up to

her medical examination of S.Z.  Her testimony was objective and documentary in nature,

not personal opinion regarding S.Z.'s credibility; thus, it did not improperly intrude upon

the jury's function to evaluate the credibility of the victim," citing *Hernandez*, *supra*, 615

A.2d at 1340-41.  (*Id.*, ECF pp. 8-9).  Fifth, the hearsay statements were admissible

under *Commonwealth v. Charlton*, 902 A.2d 554 (Pa. Super. Ct. 2006), as S.Z. testified at trial and could be cross-examined.  (*Id.*, ECF p. 9).

Petitioner cites due process but fleshes out his argument by relying on errors the trial court supposedly made under state rules of evidence.[3]  Petitioner is therefore making a state-law claim.  *See Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir. 1989)("Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts.").  As noted above, in a habeas proceeding, federal courts do not correct errors in state law.  *Swarthout, supra,* 562 U.S. at 219, 131 S.Ct. at 861; *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)(federal habeas does not lie for errors of state law, and due process guarantees fundamental fairness in a criminal trial, not the Supreme Court as the promulgator of state rules of criminal procedure); *Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001)("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence" and "is limited to deciding whether the admission of the evidence rose to the level of a due process violation").  We therefore reject this claim as a basis for habeas relief.[4]

---

[3]  Petitioner did the same on direct appeal, making a federal due process claim that Dr. Taroli's testimony violated fundamental fairness by bolstering the testimony of the minor witnesses but then relying on state-court cases dealing with the admission of evidence.  (Doc. 21-2, ECF pp. 14-15, Petitioner's Brief on direct appeal).

[4]  We observe that to rise to the level of a due process violation, a claim of evidentiary error must be "of such magnitude as to undermine the fundamental fairness of the entire trial." *Keller*, *supra*, 251 F.3d 408 at 413; *Floyd v. Ricci*, No. 09-CV-5338, 2011 WL 5825925, at *11 (D.N.J. Nov. 17, 2011).  *See also Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 1721-22, 123 L.Ed.2d 353 (1993)(noting that trial error must have a "substantial and

B.  *The Claims of Prosecutorial Misconduct*

1.  *The Claim that the Prosecutor Misrepresented to the Jury the Testimony of A.G. and S.Z.*

Petitioner claims that the prosecutor committed misconduct when he misrepresented to the jury the testimony of A.G. and S.Z.

In pertinent part, A.G. testified as follows.  When she and S.Z. went to Petitioner's house, they would play games like tag, hide-and-seek and tug-of-war with Petitioner.  (Doc. 21-6, ECF pp. 124-25).  When they played these games, he would wear a robe with nothing on underneath.  (*Id.*, ECF p. 125).  When they were  playing tug-of-war one time, A.G. and S.Z. were on one side and Petitioner on the other.  (*Id.*).  They tugged on a blanket Petitioner had around him and won by pulling the blanket away. (Id.).  When they pulled the blanket away, A.G. saw him in a bathrobe.  She could see his chest because the "robe was sometimes open but like closed at the bottom because he tied it."  (*Id.*, ECF p. 126).  "[I]f he bent down, you could see his butt."  (*Id.*).  On cross-examination, A.G. confirmed that she saw Petitioner's "butt when he bent down."  (*Id.*, ECF p. 149).  She also testified:

> Q: But [Petitioner] never exposed himself to you and showed you any part of his body, did he?
>
> A: No. Like he would leave his —- I told you that he would leave like his robe open.

---

injurious effect or influence in determining the jury's verdict" and discussing factors that affect that analysis).

> Q: And tie it at the bottom?
>
> A: Yeah, but you could still like see.
>
> Q: See his chest?
>
> A: Yeah, you could see his chest.
>
> Q: Right?
>
> A: Yeah.

(*Id.*).

In his closing, the prosecutor stated:

> Let's look at some of the testimony. . . . [A.G.] testified when they went over there –- she went over there.  They played a game, hide-and-seek, or they were playing tag, some games over there.  And, yeah, at that time, he had his bathrobe on and no clothes, and he was chasing them around the house.  She said she didn't see anything, but he was chasing them around in his bathrobe. . . . .
>
> And they were playing tug-of-war and that these two little girls were playing tug-of-war with him.  He has a blanket, and they somehow  win, and they overpowered him, pulled his blanket off him, and then low (sic) and behold he has no clothes on him.  I guess that was a big mistake.  He didn't mean for that to happen even though they were over the house and he didn't have any clothes on.

(Doc. 21-7, ECF pp 141-42).

In pertinent part, S.Z. testified as follows:

> And then he pulled me over, and then he started pulling down my pants and underwear, and then I felt something by my butt, and I didn't know what it was.
>
> Q: Could you describe how it feels?

-13-

A: It felt like sort of a finger but different.

Q: What do you mean "different," though?

A: Like it felt like hard and everything.

Q: Did it have the same kind of texture as let's say your finger, in other words, or do you mean hard like steel, or what do you mean?

A: Hard, like not as hard as a pencil, but it felt hard and soft.

Q: Okay, hard and soft, okay.  And then where did you feel that?

A: By my –- or on my butt.

(Doc. 21-6, ECF p. 175).

In his opening, the prosecutor stated: "She felt something on her butt, on her buttocks, that was soft and kind of fleshy . . . ."  (Doc. 21-6, ECF p. 14).  In his closing, the prosecutor stated: "And in the bed, she said she feels something in her butt that's kind of like soft and fleshy but its hard yet."  (Doc. 21-7, ECF p. 151).

Petitioner contends that the prosecutor misrepresented to the jury A.G.'s testimony that after the tug-of-war, she saw Petitioner without any clothes on when she really testified she had only seen his chest because the robe was tied at the bottom, albeit that she also testified she could see Petitioner's buttocks.  He contends that the prosecutor misrepresented S.Z.'s testimony that the "sort of a finger" she felt by her buttocks was "fleshy" when S.Z. did not testify it felt "fleshy."  He maintains the prosecutor's misrepresentations violated due process because the evidence against him

was not strong as there was no physical evidence incriminating him and the trial was simply a test of the credibility of the minor witnesses.

Prosecutorial misconduct may so infect the trial with unfairness that it violates due process. *See Moore v. Morton*, 255 F.3d 95, 105 (3d Cir. 2001). The misconduct must be a failure to observe fundamental fairness. *Id.* "It is not enough to show that a prosecutor's remarks were inappropriate or even deserving of universal condemnation." *Reid v. Beard*, 420 F. App'x 156, 159 (3d Cir. 2011) (nonprecedential) (citing *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)). To determine if the prosecutor's conduct violated due process, "the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore*, *supra*, 255 F.3d at 107.

We decide that this claim lacks merit. S.Z. testified that she felt something on her buttocks like "sort of a finger," "hard and soft," but "not as hard as a pencil." She did not testify that it was "fleshy." The prosecutor's statement that she did was thus incorrect but nonetheless, at most, a questionable characterization of her testimony. Additionally, the trial court instructed the jury several times that the argument of counsel was not evidence, that the jury did not have to accept counsels' arguments as evidence, and that the jury was the sole finder of the facts. (Doc. 21-7, ECF pp. 163-64; p. 176, 180, 183). Finally, we have reviewed the entire transcript and conclude that the prosecutor's remarks in context were not obviously prejudicial and hence did not violate

due process.  *See Echols v. Ricci*, 492 F. App'x 301, 314 (3d Cir. 2012) (nonprecedential)(a prosecutor's "verbally indiscreet" remarks that are not "obviously prejudicial" would not be considered a violation of due process)(quoting *United States v. Homer*, 545 F.2d 864, 868 (3d Cir. 1976)).

The same analysis applies to the prosecutor's incorrect remark that A.G. testified that Petitioner had no clothes on when the minors pulled the blanket away during the game of tug-of-war.  A.G. testified he had his robe on tied at the waist.  The remark was questionable but in context did not violate due process, especially given the court's instructions that counsels' argument are not evidence and that the jury is the sole finder of the facts.

2.  *The Claim that the Prosecutor Attempted to Inflame the Passions of the Jury by Negative Remarks About His Character*

Petitioner claims that the prosecutor violated due process by referring to Petitioner using the inflammatory word "perverted."  In his closing, as cited by Petitioner, the prosecutor rhetorically asked why S.Z. went to Petitioner's house "all the time."  (Doc. 21-7, ECF pp. 142-43).  "Why did [S.Z.] end up with some kind of relationship?  It turned out to be a sick perverted relationship . . . ."  (*Id.*, ECF p. 143).  Later, the prosecutor said:

He plays games with [S.Z.] he plays hide-and-go seek and cops and robbers, different games like that.  He plays games when that little [A.G.] came over, and he would chase [A.G.] in his robe.  Is that something that's normal, or is that how he gets his jollies?  Is that how he gets his excitement, his

-16-

> perverted excitement, whatever it is, by doing that kind of
> stuff?

(*Id.*, ECF p. 146).

Respondents argue that we cannot consider this claim because Petitioner procedurally defaulted it by not raising it on his direct appeal in state court.  Petitioner counters that he raised this claim in his PCRA petition but that PCRA counsel failed to pursue it on appeal.  Relying on *Martinez v. Ryan*, ____ U.S. ____, ____, 132 S.Ct. 1309, 1318, 182 L.Ed.2d 272 (2012), he asserts that he can show cause and prejudice to excuse his default.

The record does show that Petitioner presented a claim of prosecutorial misconduct based on remarks that allegedly would have inflamed the jury, (doc. 21-3, ECF p. 16), but that PCRA counsel did not pursue the claim.  (*Id.*, ECF pp. 26-31). However, *Martinez* does not assist Petitioner.  *Martinez* allows a petitioner to rely on PCRA counsel ineffectiveness to establish cause for a default only on a claim of trial-counsel ineffectiveness.  The instant claim is not one of trial-counsel ineffectiveness but of prosecutorial misconduct.  *See Stroll v. Johnson*, C.A. No. 13-1675, 2013 WL 6074160, at *1 (3d Cir. 2013)(nonprecedential)(*Martinez* does not apply to a defaulted claim of judicial error concerning an improper jury instruction); *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013)("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel")(refusing to apply *Martinez* to a claim that the petitioner was incompetent to be executed).

We will therefore not consider this claim as it has been procedurally defaulted.

C.  *Claims of Ineffective Assistance of Trial Counsel*

1.  *The Claim that Trial Counsel Was Ineffective in Not Knowing the Medical Exception to the Hearsay Rule Set Forth in Pa. R. Evid. 803(4)*

As noted above, Dr. Taroli, an expert in forensic pediatrics and the Commonwealth's medical expert, testified to certain matters concerning S.Z.  Petitioner contends that trial counsel was ineffective in not objecting to portions of the testimony as hearsay, and as hearsay that was not admissible under the hearsay exception in Pa. R. Evid. 803(4) for statements made for medical diagnosis or treatment.

As detailed more fully above, over defense counsel's objection, Dr. Taroli testified to how the allegations against Petitioner surfaced, that one of the other minor victims, B.C., had given information to her grandmother concerning alcohol and cigarettes Petitioner had provided two of the girls and about a picture of him naked on a cell phone.  (Doc. 21-7, ECF p. 37).

In response to the following question from the prosecutor, over defense counsel's hearsay objection, Dr. Taroli testified as follows:

> Q: In regards to the child, did she make any statements to you, or did you ask her in regards to basically what had happened that would assist you in your physical exam to look for any areas of injury?
>
> . . . .

THE WITNESS: The child disclosed that a number of sexual acts had been performed.  She was exposed to a large amount of inappropriate sexual content.  She had been touched inappropriately, that she would have to play a game where she sat on top of him and had to go up and down.

He showed pictures of pornography and sex toys on the computer.  She remembered the first time something happened when she was much younger and he was touching her private and rubbing it.  The way –- what she had said was fiddling with it.  He pulled her over on her side, and she felt something against her butt which was soft and then became hard.  She didn't know what it was at that time.

He would wear nothing under his robe.  He would masturbate in front of her, that he would masturbate and white stuff would come out of his penis.  And when he would chase her around the house, the white stuff would go all over the place.

(*Id.*, ECF p. 41).

Upon further questioning, she testified that S.Z. told her that "he did try to put [his penis] in her butt." (*Id.*, ECF p. 41-42).

Petitioner contends that trial counsel should have objected to the above testimony as it was not relevant to medical diagnosis or treatment under state rule of evidence 803(4) and improperly identified Petitioner as the perpetrator.  *See Commonwealth v. Smith*, 545 Pa. 487, 494-95, 681 A.2d 1288, 1292 (1996)(victim's out-of-court statement identifying the defendant as the perpetrator of the injuries was not admissible under Rule 803(4) because the identity of the perpetrator is irrelevant to medical diagnosis or treatment).

-19-

Dr. Taroli also testified to "associated symptoms" S.Z.'s parents reported to her: "She had not been doing well in school for about two years prior to the visit with me. She had had a lot of anger issues in the year prior.  The summer before the mother reported to me that the child had a lot of nightmares and would be screaming in the middle of the night."  (Doc. 21-7, ECF p. 38).  Petitioner argues trial counsel should have objected to this testimony because the crimes were alleged to have occurred between October and December 2006, so that testimony about a symptom going back more than two years before the examination allowed the jury to improperly infer abuse over a longer period of time.

Respondents argue that we cannot consider this claim because Petitioner failed to raise it in state-court proceedings.  Petitioner did fail to raise this claim in the state courts, but as he urges, we must decide whether we can consider it under *Martinez*, *supra*, as he contends PCRA counsel was ineffective in not pursuing the claim in PCRA proceedings.

*Martinez* created a "narrow exception" to the rule in *Coleman v. Thompson*, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 2566-67, 115 L.Ed.2d 640 (1991), that an attorney's errors in postconviction proceedings cannot be cause to excuse a procedural default.  *Martinez*, *supra*, ____ U.S. ____, ____, 132 S.Ct. at 1315.  The Supreme Court held: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Id.* at ____, 132 S.Ct. at 1315.

Petitioner's PCRA proceedings qualify as initial-review collateral proceedings.  *See Cox v. Horn*, 757 F.3d 113, 24 n.8 (3d Cir. 2014).  Under *Martinez*, a petitioner can establish cause to excuse a default if: (1) postconviction counsel at the initial review collateral proceedings was ineffective under the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and (2) the underlying claim of ineffective assistance of trial counsel "is a substantial one," meaning "the claim has some merit."  *Martinez*, ____ U.S. ____, 132 S.Ct. at 1318.  *See also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

*Martinez* analogized the second part of this test to deciding whether to grant a certificate of appealability in a habeas action, *Martinez*, ____ U.S. at ____, 132 S.Ct. at 1318-19, so the underlying claim can be said to have some merit if reasonable jurists would find the claim debatable.  *Valentin-Morales v. Mooney*, No. 13-CV-3271, 2015 WL 617316, at *4 (E.D. Pa. Feb. 11, 2015)(citing *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029, 1040, 154 L.Ed.2d 931 (2003)(cited in *Martinez*)).  *See also Cox*, *supra*, 757 F.3d at 119 (observing that the "some merit" part is "analogous to the substantiality requirement for a certificate of appealability")(citing *Martinez*).

We start with the second part of this test, whether the underlying claim of trial counsel ineffectiveness has some merit.  The *Strickland* analysis applies here.  *Strickland* sets forth a two-prong test to establish ineffectiveness.  First, counsel's performance must be deficient.  *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005)(citing *Strickland*).  Second, counsel's deficient performance must have prejudiced the defense.

-21-

*Id.* (quoting *Strickland*).  On the second prong, a petitioner must "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Id.* at 105 (quoting *Strickland*).

On the first prong of this analysis, we note, contrary to Petitioner's contention, that trial counsel did object to B.C.'s hearsay to her grandmother, arguing that the testimony did not come within Rule 803(4)'s exception for medical treatment or history.  We will let that pass, however, because Petitioner cannot satisfy *Strickland*'s second prong, that there is a reasonable probability that had trial counsel made the Rule 803(4) objection, the result of the proceeding would have been different.

The superior court disposed on direct appeal of the same Rule 803(4) claim about Dr. Taroli's testimony as presented here.  The superior court ruled the statements were admissible under state law, reasoning as follows.  First, S.Z.'s statements were admissible under Rule 803(4) unless they were testimonial in nature, citing *Commonwealth v. Allshouse*, 604 Pa. 61, 985 A.2d 847 (2009), but her statements were not testimonial; they were instead given for the purpose of medical diagnosis and treatment.  (Doc. 21-3, ECF p. 8).[5]  Second, Dr. Taroli's testimony was not given to sustain S.Z.'s credibility but to show how a doctor conducts a medical examination, citing *Commonwealth v. Hernandez*, 420 Pa. Super. Ct. 1, 615 A.2d 1337 (1992).  (*Id.*).  Third, "[t]he content of Dr. Taroli's testimony was a chronology of events leading up to her

---

[5]  *Allshouse* has a subsequent history that has no bearing on this case.  It was vacated in *Allshouse v. Pennsylvania*, 562 U.S. 1267, 131 S.Ct. 1597, 179 L.Ed.2d 495 (2011), and the Pennsylvania Supreme Court issued another opinion on remand in *Commonwealth v. Allshouse*, 614 Pa. 229, 36 A.3d 163 (2012).

medical examination of S.Z.  Her testimony was objective and documentary in nature, not personal opinion regarding S.Z.'s credibility; thus, it did not improperly intrude upon the jury's function to evaluate the credibility of the victim," citing *Hernandez*, *supra*, 615 A.2d at 1340-41.  (*Id.*, ECF pp. 8-9).  Fourth, the hearsay statements were admissible under *Commonwealth v. Charlton*, 902 A.2d 554 (Pa. Super. Ct. 2006), as S.Z. testified at trial and could be cross-examined.  (*Id.*, ECF p. 9).

After review of the cases the superior court cited, we cannot disagree with its assessment, contrary to Petitioner's position, that Dr. Taroli's testimony concerning the hearsay statements of the minor witnesses going to medical treatment or history was permitted under Rule 803(4).  Petitioner therefore cannot show that the result of his trial would have been different, to the extent he relies on Rul 803(4).

We discuss more fully two specific parts of the underlying claim of trial-counsel ineffectiveness: (1) trial counsel failed to object to Dr. Taroli's testimony that S.Z. identified Petitioner as the perpetrator; and (2) trial counsel failed to object to Dr. Taroli's testimony of "associated symptoms" that improperly allowed the jury to infer abuse over a longer period of time than the time frame of the charges.

Even if we assume there was constitutional error in the admission of this testimony, Petitioner still could not show a reasonable probability that the result of the proceeding would have been different.

To obtain relief in federal habeas for trial error, the trial error must have:

> "had substantial and injurious effect or influence in
> determining the jury's verdict."  *Brecht v. Abrahamson,* 507

U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (internal quotation marks omitted).  This means that there "must be more than a reasonable probability that the error was harmful . . . [and] the court must find that the defendant was actually prejudiced by the error."  *Davis v. Ayala,* ____ U.S. ____, 135 S.Ct. 2187, 2198, 192 L.Ed.2d 323 (2015)(internal quotation marks omitted).

   "If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand."  *O'Neal v. McAninch,* 513 U.S. 432, 437, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)(quoting *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946))(alteration in original).  "But if we have 'grave doubt' about whether the error had substantial and injurious effect or influence in determining the jury's verdict, we must conclude that the error was not harmless."  *Adamson v. Cathel,* 633 F.3d 248, 260 (3d Cir. 2011).  The Supreme Court has cautioned that "the uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict."  *O'Neal,* 513 U.S. at 435, 115 S.Ct. 992.

*Washington v. Secretary Pennsylvania Dep't of Corr.*, 801 F.3d 160, 170-71 (3d Cir.

2015).

   Based on the trial record, we conclude that neither supposed error actually

prejudiced Petitioner.  The hearsay statement that S.Z. had not been doing well in school

for about two years prior to the medical examination with Dr. Taroli was made in passing

and could not have actually prejudiced Petitioner as the trial concentrated on specific

events giving rise to the charges.  Dr. Taroli's identification of Petitioner as the

perpetrator, an apparent violation of *Smith*, *supra*, also does not prejudice Petitioner as it

also was made in passing and no emphasis was placed on it by either the prosecutor or

the trial court.  In his opening and closing, the prosecutor referenced a different portion of

Dr. Taroli's testimony, that her medical examination of S.Z. revealed two lacerations in S.Z.'s hymen.  (Doc. 21-6, ECF p. 14; doc. 21-7, ECF p. 151).[6]  In his closing, the prosecutor argued for the credibility of the three minor witnesses based on the evidence at trial, and made no attempt to bolster S.Z.'s credibility by citing Dr. Taroli's hearsay. The trial court also mentioned Dr. Taroli, but only as to the reason why the court had permitted her testimony, that she could "supply jurors with specialized information, explanations and opinions that could potentially help them decide a case."  (Doc. 21-7, ECF p. 180).

Petitioner cannot show that the underlying claim of trial counsel ineffectiveness has some merit.  It follows that he cannot show cause for PCRA counsel's failure to raise this claim of trial counsel ineffectiveness.  This claim will therefore be denied for Petitioner's procedural default.

2.  *The Claim that Trial Counsel Was Ineffective in Failing to Present Evidence of Petitioner's Good Character*

Petitioner claims that trial counsel was ineffective in failing to present evidence of his good character and that he failed to investigate the evidence of good character that could have been presented at trial when credibility was a major issue.

---

[6]  Dr. Taroli testified that S.Z. "had two complete tears in her hymen" indicating "some past trauma to the hymen," (doc. 21-7, ECF pp. 47-48), that "something had ruptured through the hymen into the vagina causing lacerations that were not able to heal completely."  (*Id.*, ECF p. 48).  Dr. Taroli could not give a time frame within which the lacerations occurred and stated that they could have been caused by "anything," "a finger, penis, object . . ."  (*Id.*).

This issue was explored at the hearing the trial court held on the PCRA

petition but was not pursued in PCRA counsel's post-hearing brief.  Nor was it mentioned

in the trial court's opinion denying PCRA relief.  Neither did PCRA counsel raise it on

appeal from denial of the PCRA petition.

At the hearing, trial counsel testified as follows:

Q: Did you introduce any character witnesses; and if not, why
not?

A: We didn't have any character witnesses. . . . But there was
an enormous amount of quote, "potential other act evidence"
that we were provided in discovery.

   If you open it –- if you prevent (sic) good character evidence
in, it opens the door perhaps to the Commonwealth
presenting evidence that can contradict you.  Michael had a
good background.  He was free and clear of all criminal
offenses, but there were some things that could have
potentially come out about character evidence that made us
decide not to do that.

(Doc. 21-9, ECF pp. 40-41).

Respondents argue we cannot consider this claim as it is procedurally

defaulted.  Petitioner contends that under *Martinez*, PCRA counsel's ineffectiveness in

not pursuing this claim excuses his default.

As noted above, to excuse default under *Martinez* based on PCRA

counsel's ineffectiveness, Petitioner must show in part that the underlying claim of

ineffective assistance of trial counsel has some merit.  Petitioner cannot make this

showing because he does not identify the character witnesses who would have testified

for him at trial nor has he described other character evidence that could have been

presented.  *See Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008)("'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing'" in 2254 proceedings)(quoting *Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir. 1987)).

Since Petitioner's vague assertions do not show the underlying claim of ineffective assistance of trial counsel has some merit, Petitioner cannot establish cause for PCRA counsel's failure to raise this claim of trial-counsel ineffectiveness.  This claim will therefore be denied for Petitioner's procedural default.[7]

### 3. *The Claim that Trial Counsel Was Ineffective for Basing Trial Decisions on Monetary Considerations*

Petitioner claims that counsel was ineffective in basing trial decisions on monetary considerations rather than on the defense of his client.  The only support he provides for this claim is trial counsel's decision not to hire a private investigator.[8]

This claim was explored at the PCRA hearing.  Trial counsel testified he represented Petitioner pro bono, agreeing to do so for a firm in California.  (Doc. 21-9,

---

[7]  We note that Petitioner cites *Commonwealth v. Hull*, 982 A.2d 1020 (Pa. Super. Ct. 2009), in support of this claim.  *Hull* is distinguishable.  In *Hull*, unlike here, there was no doubt the petitioner had witnesses who could testify to his good character.  *Id.* at 1022.  Additionally, trial counsel there had no reason to believe there was evidence of the petitioner's bad character that could be used to rebut the good character evidence.  *Id.* at 1025.  Here, on the other hand, trial counsel testified they had no character witnesses and that discovery revealed an "enormous amount" of "other act evidence" that could have been used if they had decided to raise the issue of Petitioner's good character.

[8]  In his reply brief (Doc. 35), Petitioner argues for the first time that monetary considerations drove the decision not to hire Dr. Gary Glass, an expert who could have testified to the supposed leading nature of the interview with S.Z.  For the reasons set forth below in dealing with the ineffectiveness claim for failing to call Dr. Glass as a witness, we reject this claim.

ECF pp. 6-8).  He paid co-counsel (local counsel) out of his own pocket.  (*Id.*, ECF p. 9).

He also testified:

> It's never been my style to hire investigators unless I want somebody to do one specific task. . . . [Co-counsel] and I made the determination that the discovery package we had received was sufficient and there was really nothing that we needed to have investigated.
>
> We knew the background of the girls.  Mr. Grego had given us a tremendous amount of background because they were their neighbors.  We had seen the videotaped interviews.

(*Id.*, ECF pp. 17-18).

> Co-counsel testified:
>
> Q: In regards to a private investigator, did you ever hire or fire a private investigator?
>
> A: No.  There was no private investigator in place at the time . . .  [of] the preliminary hearing.  There was talk about it.  But basically the impression I had was that out of California they were going to locate somebody.  I don't know if it was the cost.

(*Id.*, ECF p. 71).  Co-counsel said he made no effort to hire an investigator.  As he stated:

> The first issue is: Is one needed?  And, if so, for what?  And the third question would be: If we are going to get one, who's going to pay for it if this firm [in California] doesn't exist anymore?
>
> We never even got to that point of who's going to pay for it because given the way this case was developing there wouldn't be no witness that would suddenly appear to say this is what happened and didn't happen.  It really was a credibility issue.

(*Id.*, ECF p. 72).

When questioned about the need for an investigator, co-counsel stated that as a defense attorney, you "take every resource you can" and that if they had an investigator, they would have used him to investigate the background of S.Z.'s family "because one of the issues is where are these allegations coming from." (*Id.*, ECF pp. 72-73).  According to co-counsel, the "family dynamics" were "quite chaotic." (*Id.*).  In the end, however, there was nothing to indicate they were "crazy not to get an investigator." (*Id.*).  Petitioner testified that he did not know what the investigator would have looked into.  (*Id.*, ECF p. 48).

The trial court rejected this claim, reasoning that trial counsel and co-counsel had agreed that after a review of the discovery no investigator was needed as the issue was one of credibility.  (Doc. 21-3, ECF p. 56).  The court also noted Petitioner could not say what an investigator would be used for.  (*Id.*).  On appeal, the superior court affirmed, noting that the argument made on appeal was "woefully underdeveloped" and that the trial court's analysis was well reasoned.  (Doc. 21-3, ECF p. 84).

As noted above, we may grant the writ only if the state courts' adjudication of the claim was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent, or if the state courts' adjudication of the claims was based on a unreasonable determination of the facts.  In light of these standards, we cannot reject the state courts' determination that the failure to hire an investigator was not based on monetary considerations, rather than on what was needed to defend the client.

Petitioner's argument does shade off into one that effective representation required an investigator, but we are not inclined to grant relief on that basis, leaving aside the exhaustion issue, because Petitioner, as the trial court noted, could not identify what an investigator could have done.  Even in his current 2254 filings, Petitioner does not specify what an investigator would  have explored.  We will therefore deny this claim.

4.  *The Claim That Trial Counsel Was Ineffective in not Requesting a Competency Hearing for the Minor Witness S.Z.*

Petitioner claims trial counsel was ineffective in not requesting a competency hearing for S.Z. under state law.  He argues S.Z.'s answers at trial on cross-examination that she did not know or could not remember shows that she was incompetent to testify.  Petitioner cites in support *Medina v. Diguglielmo*, 461 F.3d 417 (3d Cir. 2006).

This claim was not presented in the PCRA proceedings.  Respondents do not argue failure to exhaust, but we need not consider exhaustion if the claim lacks merit in any event.  *See* 28 U.S.C. § 2254(b)(2).  We decide this claim lacks merit.

S.Z. was twelve years old when she testified.  (Doc. 21-6, ECF p. 153).  Under Pennsylvania law, the trial court must conduct an inquiry into the competency of a person to testify who is under fourteen years of age.  *Rosche v. McCoy*, 397 Pa. 615, 621, 156 A.2d 307, 310 (1959).  The inquiry must show:

> (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering *what it is*

-30-

> that she is called to testify about and (3) a consciousness of
> the duty to speak the truth.

*Id.* at 620-21, 156 A.2d at 310 (emphasis in original).

At trial, the prosecutor asked S.Z. at the beginning of her testimony if she

knew the difference between telling the truth and telling a lie, and she answered "yes."

(Doc. 21-6, ECF p. 154).  The prosecutor questioned her further:

> Q: Okay.  What does it mean to tell a lie?
>
> A: Tell a lie, it means like –- for example, if I said to you I had
> an orange cat and I really have a black cat, that would be
> lying, and lying is bad.
>
> Q: Okay.  And if someone tells a lie, do they get in trouble?
>
> A: Yes.
>
> Q: Do you promise to tell the truth here today?
>
> A: Yes.
>
> [the prosecutor]: Your Honor, I ask the witness to be found
> competent based on her age.
>
> [Petitioner's trial counsel]: We're not challenging that.
>
> THE COURT: All right.

(*Id.*, ECF p. 154).

This questioning satisfied the third part of the inquiry, consciousness of the

duty to speak the truth, but did not go into the other two parts of the inquiry.  However,

there is no need to inquire as to the other parts if the witness's testimony shows that she

can satisfy them as well.  *Commonwealth v. Dowling*, 584 Pa. 396, 406-07, 883 A.2d

570, 577 (2005)(failure to specifically ask questions about the minor's ability to perceive or recollect past events did not mean minor was incompetent to testify when her trial testimony showed she met this criteria).  *See also Dove v. York County*, No. 12-CV-1517, 2013 WL 6055226, at *9 (M.D. Pa. Nov. 15, 2013)(superior court ruling that trial counsel was not ineffective in not requesting a competency hearing was not an unreasonable application of *Strickland* when, in part, the minor witness's trial testimony showed he was competent to testify).

In the instant case, S.Z. testified that she understood the difference between truth and falsehood.  Additionally, and contrary to Petitioner's assessment, our own review of her testimony (Doc. 21-6, ECF pp. 153-267) indicates she could remember events and respond to questions.  Of course, on cross-examination, she sometimes responded to certain questions, like any other witness, that she did not remember or did not know, but in context, these responses only went to her credibility, not her competency to testify.

Petitioner's reliance on *Medina* is misplaced as that case is easily distinguishable.  There, the Third Circuit did find that trial counsel's conduct was deficient in not objecting to the competency of a twelve-year-old witness (although the court decided the defendant had not been prejudiced by this performance and so denied habeas relief).  However, the court of appeals did so on the basis that the trial record showed the witness, when questioned about it, indicated he did not know the difference

between the truth and a lie.  *Id.* at 421-22, 428.  Here, S.Z. did testify she knew the difference.

If trial counsel had moved for a competency hearing for S.Z. or otherwise challenged her competency, he would not have succeeded.  Counsel is not ineffective for failing to raise a meritless argument.  *United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015).

5. *The Claim That Trial Counsel Was Ineffective in Not Calling an Expert to Testify to the Leading and Suggestive Questioning During S.Z.'s Interview at the Pegasus Center and in Not Requesting a Competency Hearing for Her Based on Taint*

Petitioner claims that trial counsel was ineffective in not calling an expert to testify to the leading and suggestive questioning during S.Z.'s interview at the Pegasus Center.  The interview was recorded on a DVD and made available to the defense.  As part of this claim, Petitioner also contends that counsel was ineffective in not requesting a competency hearing based on taint.

This claim was explored at the PCRA hearing.  Trial counsel testified he retained Dr. Michael Glass as an expert to see if the defense could argue that the minors' testimony had been tainted by the forensic interviewer's questioning.[9]  As part of that process, among other evidence, he and Dr. Glass reviewed the DVDs of the minors' interviews.  (Doc. 21-9, ECF p. 10).  But Dr. Glass "didn't feel comfortable" giving trial

_____

[9]  Under Pennsylvania law, taint affects a minor witness's competency to testify. *Commonwealth v. Delbridge*, 578 Pa. 641, 655, 855 A.2d 27, 35 (2003).  Taint can be raised in a pretrial competency hearing.  *Id.* at 664, 855 A.2d at 40.

counsel "an affidavit about the taint aspect of the case." (*Id.*, ECF p. 11).  Trial counsel

then thought he might use Dr. Glass at trial to testify about the "suggestibility of the

interview process" if the Commonwealth had given notice under 42 Pa. Cons. Stat. Ann.

§ 5985.1 of its intent to play the DVDs at trial, but the Commonwealth decided not to play

the videos.[10]  Since the Commonwealth was not going to use the DVDs, trial counsel

decided not to put an expert on the stand to testify about the interviews as counsel had

decided he did not want the witnesses stories told two times.  He added that they were

able to address areas of impeachment presented by the DVDs by other means.  (*Id.*,

ECF p. 11).  In regard to a competency hearing raising the issue of taint, counsel testified

that such hearings are "hard to get" and require an affidavit, which counsel did not have

from Dr. Glass.  (*Id.*, ECF pp. 13-14).

Petitioner argues that the decision not to call Dr. Glass could not have been

based on reasonable trial strategy.  *See Strickland, supra,* 466 U.S. at 668, 104 S.Ct. at

2065 (a petitioner "must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy'")(quoted case omitted).  He

asserts that the decision not to use Dr. Glass was a monetary one as the expert charges

$4,000 for a full day of deposition.  As further support, Petitioner cites trial counsel's

PCRA testimony where he said that "wherever you can have an expert you should have

---

[10]  In relevant part, when certain conditions have been satisfied, section 5985.1 allows the use of an out-of-court statement made by a witness twelve years old or younger about sexual offenses if the witness testifies at the proceedings or if she is determined to be "unavailable" for trial as defined in the section.

an expert," and "when a jury hears one expert," "[i]ts always a good idea" to "have a contra expert." (*Id.*, ECF p. 32).

The trial court denied this claim, accepting trial counsel's reasons for not calling Dr. Glass. (Doc. 21-3, ECF p. 44). On appeal, the superior court ruled that Petitioner had failed to present Dr. Glass at the PCRA hearing so he failed to meet his burden of showing how the expert could have advanced his case. (*Id.*, ECF p. 83).

As noted above, we may grant the writ only if the state courts' adjudication of the claim was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent, or if the state courts' adjudication of the claims was based on a unreasonable determination of the facts. In light of these standards, we will not disturb the state courts' determination that the failure to call an expert to testify to the alleged leading and suggestive questioning during S.Z.'s interview at the Pegasus Center was not based on sound trial strategy. Petitioner's reliance on monetary considerations as the real reason cannot stand in the face of trial counsel's testimony that Dr. Glass was unwilling to support a claim that the minor witnesses' forensic interviews had been tainted. And trial counsel adequately explained why he decided not to call Dr. Glass for other purposes.

Petitioner also contends that counsel was ineffective in not requesting a competency hearing based on taint. He asserts that counsel's reason for not seeking a hearing could not be considered sound strategy as he could not have known whether the hearing would be granted until he filed for one. We reject this claim. Counsel could not

have been ineffective in failing to seek a hearing when he was advised by an expert that

the expert could not support an argument based on taint.

     6.  *The Claim That Trial Counsel Was Ineffective in Not*
          *Playing the DVD of S.Z.'s Forensic Interview For the*
          *Jury to Show that She Had Been Tainted*

Petitioner claims that trial counsel was ineffective in not playing the DVD of

S.Z.'s forensic interview for the jury to show that she had been tainted by the interview.

As part of this claim, he also asserts counsel should have played the DVD at trial so that

the jury could have seen S.Z.'s demeanor for themselves rather than rely on counsel's

descriptions of her demeanor.  S.Z.'s demeanor was supposedly lighthearted.

We reject the first part of the claim.  Petitioner bases this part on extensive

quotations from the questioning conducted by the forensic interviewer. (Doc. 28, ECF pp.

40-42).  He asserts the questioning shows that the interviewer followed a line of

suggestive questioning intended to implant in S.Z. false memories and to distort real

memories so as to taint her testimony.  *See Delbridge*, *supra*, 578 Pa. at 655, 855 A.2d at

35 ("Taint is the implantation of false memories or the distortion of real memories caused

by interview techniques of law enforcement, social service personnel, and other

interested adults, that are so unduly suggestive and coercive as to infect the memory of

the child, rendering that child incompetent to testify.").  Trial counsel could not have been

ineffective in not using the questioning on cross-examination to show taint because under

Pennsylvania law taint goes to the witness's competency to testify, not her credibility, and

as such, has to be raised in a pretrial proceeding. *Id.* at 664, 855 A.2d at 40.  Any

attempt to establish taint on cross-examination would therefore have failed.

The second part of this claim was explored at the PCRA hearing.  Trial

counsel testified that he considered playing the DVD at trial but decided against it so that

the jury would not in essence hear S.Z.'s testimony twice.  (Doc. 21-9, ECF p. 14).  He

also testified that he had her interview transcribed, and did use it to cross-examine her.

(*Id.*, ECF p. 15-16).  The trial court rejected this claim, reasoning that counsel had a

reasonable trial strategy in not playing the DVD.  (Doc. 21-3, ECF pp. 46-47).  On appeal,

the superior court agreed.  (*Id.* ECF pp. 83-84).  Given our deferential standard of review,

we cannot grant relief on this claim; in fact, we agree with the state courts' conclusion.

We add that the claim focuses on the jury's seeing S.Z.'s demeanor during the interview

and counsel was able to establish at trial during cross-examination S.Z.'s demeanor.

(Doc. 21-6, ECF pp. 199-200, 226).

7.  *The Claim that Trial Counsel Was Ineffective in Not*
    *Moving to Exclude the Testimony of A.G.*

Petitioner claims trial counsel was ineffective in not moving to exclude A.G.

from testifying at trial.  Petitioner argues that A.G. should not have been permitted to

testify on the following grounds.  First, she did not appear at the preliminary hearing, and

as a result the charges involving her were improperly held over for trial based on S.Z.'s

hearsay testimony concerning what A.G. would have said.  Petitioner asserts this violated

his right to confront the witnesses against him under federal and state law and his right to

due process.  Second, because A.G. was absent, a prima facie case was not otherwise established for the charges involving her.  Essentially, Petitioner is arguing that the charges involving A.G. should have been dismissed at the preliminary hearing, and that trial counsel was ineffective in not seeking dismissal of these charges at trial.[11]

Respondents argue we cannot consider this claim because it was procedurally defaulted by Petitioner's failure to raise it on direct appeal.  This is a claim of trial-counsel ineffectiveness, so it did not have to be raised on direct appeal.  Still, it could have been raised in the PCRA proceedings, but it was not, so Respondents correctly point out it was procedurally defaulted.  However, as noted above, under *Martinez*, *supra*, Petitioner can excuse the default if his PCRA counsel was ineffective in not pursuing this claim in the PCRA proceedings.  We address that issue now.

As noted above, to excuse default under *Martinez* based on PCRA counsel's ineffectiveness, Petitioner must show in part that the underlying claim of ineffective assistance of trial counsel has some merit.  *Martinez*, ____ U.S. ____, 132 S.Ct. at 1318.  Petitioner cannot make this showing.

As noted above, *Strickland* sets forth a two-prong test to establish ineffectiveness of counsel.  First, counsel's performance must be deficient.  *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005)(citing *Strickland*).  Second, counsel's deficient performance must have prejudiced the defense.  *Id.* (quoting *Strickland*).  A petitioner

---

[11] Petitioner was charged with three offenses against A.G.  He was found not guilty on the charge of corrupting the morals of a minor and guilty on the charge of open lewdness and the charge of contact with a minor for the purpose of engaging in certain sexual offenses. (Doc. 21-8, ECF pp. 9-12).

must "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Id.* at 105 (quoting *Strickland*).

Here, the first part of the claim, that the charges were upheld based on S.Z.'s hearsay testimony concerning A.G.'s out-of-court statements, cannot survive scrutiny under the first prong, as the preliminary-hearing transcript shows that S.Z. did not testify about hearsay from A.G.[12]  Failing to make a meritless claim is not deficient performance.  *Bui*, *supra*, 795 F.3d at 366-67.

The other part of this claim, that a prima facie case was not established for the charges involving A.G., fails to satisfy the second prong, a reasonable probability that the result of the proceeding would have been different.  At the preliminary hearing, the Commonwealth must establish a prima facie case.  *See Commonwealth v. Claffey,* 80 A.3d 780, 788 (Pa. Super. Ct. 2013).  Arguably, if the charges were held over for trial when the Commonwealth failed to establish a prima facie case, trial counsel should have filed a pretrial petition for a writ of habeas corpus.  *Id.*  However, at the hearing on that petition, the Commonwealth would have been entitled "to present additional evidence to demonstrate that the defendant committed the offense charged."  *Commonwealth v. Carbo*, 822 A.2d 60, 68 (Pa. Super. Ct. 2003)(en banc).  Since Petitioner was convicted on two offenses with the evidence the Commonwealth presented at trial, the sufficiency

---

[12]  S.Z. did testify to her own observation that A.G. "saw" Petitioner's "butt."  (Doc. 21-5, ECF p. 104).

of which Petitioner does not contest, the same evidence would have established a prima

facie case at the habeas hearing.  It follows that there is no reasonable probability that

the result of the criminal proceedings against Petitioner would have been different.

*Accord Miller v. Lamas*, No. 10-CV-293, 2012 WL 761999, at *5 (W.D. Pa. Feb. 15,

2012)(magistrate judge's report, adopted at 2012 WL 750908)("claims concerning the

lack of a *prima facie* case presented at a preliminary hearing are rendered moot after a

trial, wherein a criminal defendant is convicted of the crimes beyond a reasonable

doubt")(cited cases omitted)(footnote omitted).  Since Petitioner cannot show the

underlying claim of ineffective assistance of trial counsel has some merit, PCRA

counsel's alleged ineffectiveness does not excuse his procedural default of the trial-

counsel ineffectiveness claim.  We will therefore not consider the latter claim on the

merits.[13]

> D. *The Claim that the Magisterial District Judge Exhibited*
>    *Bias at the Preliminary Hearing*

Petitioner claims that the magisterial district judge was biased at the

preliminary hearing.  He relies on the ruling the magisterial district judge made in

response to the motion his preliminary-hearing counsel made to dismiss the charges.

The magisterial district judge said: "Well, counsel, your defense doesn't carry any weight

---

[13]  We also note on Petitioner's claimed right to confront the witnesses against him at a preliminary hearing, he relies on *Commonwealth v. Verbonitz*, 525 Pa. 413, 581 A.2d 172 (1990).  That was plurality opinion that did not garner the support of the majority of the justices on the state supreme court.  The Pennsylvania Superior Court later held that there was no federal constitutional right of confrontation at a preliminary hearing.  *Commonwealth v. Ricker*, 120 A.3d 349, 362-63 (Pa. Super. Ct. 2015).

in this court.  I'll tell you that right now.  This is the most despicable case I have ever sat on.  Your client is bound over on every charge." (Doc. 21-5, ECF p. 190).  Petitioner argues that this remark shows that the magisterial district judge had a "fixed bias" and believed Petitioner "was guilty from the outset, no matter what the evidence was." (Doc. 28, ECF p. 49).[14]  In his reply brief, Petitioner adds the argument that the magisterial district judge denied him his right to confront the witness against him, A.G.

Respondents argue we cannot consider this claim because it was procedurally defaulted by Petitioner's failure to raise it either on direct appeal or in the PCRA proceedings.  Petitioner admits he did not raise this claim in the state courts but argues that under *Martinez*, *supra*, Petitioner can excuse the default if his PCRA counsel was ineffective in not pursuing this claim in the PCRA proceedings.  *Martinez* does not assist Petitioner.  *Martinez* allows a petitioner to rely on PCRA counsel ineffectiveness to establish cause for a default only on a claim of trial-counsel ineffectiveness.  The instant claim is not one of trial-counsel ineffectiveness but of alleged misconduct by a state judicial officer.  *See Stroll, supra,* 2013 WL 6074160, at *1 (3d Cir. 2013) (nonprecedential)(*Martinez* does not apply to a defaulted claim of judicial error concerning an improper jury instruction); *Gore, supra,* 720 F.3d at 816("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of

---

[14]  We observe here that preliminary-hearing counsel's argument was to a large degree predicated on the minor witnesses' lack of credibility (Doc. 21-5, ECF pp. 186-90), but the "purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish that a crime was committed and a probability that the defendant was connected therewith," not to prove the defendant's guilt.  *Commonwealth v. Sanchez*, 623 Pa. 253, 322, 82 A.3d 943, 984 (2013).

ineffective assistance of trial counsel that are otherwise procedurally barred due to the ineffective assistance of post-conviction counsel")(refusing to apply *Martinez* to a claim that the petitioner was incompetent to be executed).

We therefore cannot consider this claim as it has been procedurally defaulted.  In any event, it lacks merit.  A conviction after a jury trial would render harmless any defect in the preliminary hearing.  *See Martin v. Keitel*, 205 F. App'x 925, 928 (3d Cir. 2006)(nonprecedential)(claims that prosecutors wrongly added counts to an indictment rendered harmless by a conviction after a jury trial); *Shack v. Attorney General of Pennsylvania*, 776 F.2d 1170, 1172 (3d Cir. 1985)(defects in pretrial proceedings do not ordinarily provide grounds for collateral relief after notice and a fair trial).[15]

IV.  *Conclusion*

We will issue an order denying the section 2254 petition.  The order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long

---

[15]  Petitioner has also presented as a separate claim his disagreement with the superior court's ruling on direct appeal concerning Dr. Taroli's testimony.  (Doc. 28, ECF p. 50).  We have already dealt with the issue of Dr. Taroli's testimony.

as he also seeks a certificate of appealability from the court of appeals.  *See* Federal

Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.


<u>/s/William W. Caldwell</u>
William W. Caldwell
United States District Judge

January 15, 2016